J-S63007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD KIPP BRASWELL | : | |
| | : | |
| Appellant | : | No. 1563 WDA 2017 |

Appeal from the Judgment of Sentence May 8, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0003147-2016

BEFORE:   OTT, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY OTT, J.:                          **FILED MARCH 20, 2019**

Donald Kipp Braswell appeals from the judgment of sentence imposed on May 8, 2017, in the Court of Common Pleas of Allegheny County.  In a non-jury trial, Braswell was convicted of indecent assault without consent, 18 Pa.C.S. § 3126(a)(1).  The trial judge sentenced Braswell to two years' probation.[1]  The sole issue raised in this appeal is a challenge to the weight of the evidence.  Based upon the following, we affirm.

The evidence presented at trial was summarized by the trial court, as follows:

> Jasmine Mull (Mull) testified that in January of 2016, she was an inmate at the Allegheny County Jail where she obtained a job as

---

* Former Justice specially assigned to the Superior Court.

[1] Braswell is also subject to registration pursuant to the Sexual Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.10-9799.42, registration for 15 years, for his Tier I offense.

a lounge worker. She worked in the jail cafeteria, serving food, and her supervisor was [Braswell]. Mull testified that [Braswell] asked her inappropriate questions, such as whether she liked oral sex or if she liked "69". She also recalled that he came in one day and called her by her middle name and she had no idea where he got that information because it wasn't on her record. While Mull was taking a lunch break from her work on January 18, 2016, [Braswell] came up to her and told her that he could not stop thinking about her and that he was so consumed with his thoughts of her that he was unable to have sex with his wife. After Mull returned to her work station, [Braswell] had her move so that he could stand behind her. [Braswell] then reached his hand around her and grabbed her vagina over her clothes. Mull testified that she stood there in complete and utter shock and that her face was be[e]t red. [Braswell] then stated to Mull, "from the looks of it, you want to touch mine too".

Mull went into the dish room with another inmate telling her what had just happened. The inmate informed her to tell the first correctional officer she saw. This inmate began to tell a male correctional officer what happened, but Mull was not comfortable speaking to a male. Mull stated that when a female correctional officer named Parsons arrived, Mull asked Officer Parsons to take her upstairs. When Officer Parsons asked her why, Mull told her that the kitchen supervisor touched her inappropriately and she did not feel comfortable. Mull was taken to the fourth level and put in an interview room. She met with Captain Vanchieri and told him what had happened to her.

On cross-examination, it was revealed that Mull had been convicted of various offenses including, impersonating a public servant, forgery, access device fraud, theft and receiving stolen property.

Allegheny County Jail Captain Jack Vanchieri, ("Vanchieri"), testified it was his job to supervise the entire jail. Vanchieri also testified that [Braswell] worked for Aviands, a food service company that had a contract with the jail. Vanchieri had a conversation with the victim, Mull, on January 18, 2016 sometime between 4:00 and 6:00 p.m. Mull informed Vanchieri that [Braswell] inappropriately grabbed her crotch.

Allegheny County Police Inspector William Palmer, ("Palmer"), testified that in January of 2016 he was in charge of internal

investigations at the Allegheny County Jail. After reviewing the allegations made by Mull, Palmer contacted [Braswell] by phone and indicated he wanted to obtain [Braswell's] side of the story. Palmer indicated that it was [Braswell's] idea to have the police officers come to his home to get his statement. Palmer and his partner, Ron Passaro, drove to [Braswell's] home in Mt. Oliver to interview him. The written transcript of the interview, dated January 21, 2016, establishes that [Braswell] was told that he was not compelled to make a statement as a condition of employment and he was free not to speak to the officers. A copy of the Transcibed - Recorded Interview, dated January 21, 2016, is attached hereto.

[Braswell] informed the officers that he could have unintentionally touched Mull in an inappropriate way. He stated to the officers that after the unintentional touching he told the victim, Mull, that he hoped she didn't say anything about it because he did not do anything and he wanted to make sure she understood the touching was unintentional. [Braswell] explained to the officers that he did not remember technically what he did to Mull but he hoped she did not take his actions as a sexual assault because that is not what he did.

According to [Braswell], on January 18, 2016, he had a conversation with Mull while she was eating and she was the one talking about sex. He said he just walked away. He denied having previous conversations with her about sex or his wife. [Braswell] did admit that he looked up Mull's court date and learned her middle name on the computer when he got home from work.

[Braswell] called three witnesses to testify. First, Irene Zotis testified as a character witness for [Braswell]. Next, Correctional Officer James Tegtmeier testified that on January 18, 2016, he ate in the officer's cafeteria. He spoke with [Braswell], the victim and one or two other workers while he was in the cafeteria and when he left the victim was still in the room. He did not notice anything unusual about Mull, nor did he observe any inappropriate conversation or touching. According to Tegtmeier, he was only in the serving area of the cafeteria for two to five minutes. After his food was served, he went to the officer's lounge located in a separate room.

[Braswell] testified on his own behalf. He started working for a company that sent him to the Allegheny County Jail in June of

- 3 -

2015. His job duties entailed overseeing the inmates who cooked and served the food, to issue supplies, and to make sure all items were locked and secured. [Braswell] had the power to fire inmates if they violated any rules. [Braswell] testified that Mull violated the rules by not staying in her work area, congregating with other inmates when told not to, and preparing foods that were not on the menu. He stated he reprimanded Mull and some other inmates on January 18, 2016, for not putting up supplies. According to [Braswell], he was told to watch Mull as she was known to set people up. He denied having any sexual conversations or physical conduct with Mull. [Braswell] asserted that it was Mull that made physical contact with him when she rubbed her breasts and vagina against his back. Mull then proceeded to walk away and into the dish room.

[Braswell] admitted he met with the officers at his home and at his request. He claimed he was overwhelmed when he spoke to the officers and he had no idea he could be charged with a crime. [Braswell] testified he spoke with the officers for 30-40 minutes before being recorded. [Braswell] testified in court that he believed Mull set him up for financial gain; he denied touching Mull; denied any sort of unintentional touching took place, as mentioned in his recorded statement to the police; and claimed the officers made suggestions to him through their questions.

Trial Court Opinion, 6/25/2018, at 3-8 (record citations omitted).

As stated above, the trial court found Braswell guilty of indecent assault. Following sentencing and the denial of Braswell's amended post sentence motion,[2] this appeal followed.[3]

---

[2] Braswell filed a timely post sentence motion challenging the sufficiency of the evidence, the weight of the evidence, and alleging ineffectiveness of trial counsel. Braswell's counsel also moved for an extension of time to file an amended post sentence motion and moved to withdraw from representation. The trial court granted the extension to amend the motion, and granted trial counsel's motion to withdraw. The trial court appointed new counsel for Braswell, who filed the amended post sentence motion.

[3] Braswell's counsel filed a court-ordered Pa.R.A.P. 1925(b) statement within the extension of time granted by the trial court.

Braswell presents the following issue for review:

Did the [trial] court err in denying the motion for a new trial because the verdict was contrary to the weight of the evidence presented? Is the guilty verdict a manifestly unreasonable conclusion, and should Mr. Braswell be awarded a new trial such that justice may prevail?

Braswell's Brief at 6.

A challenge to the weight of the evidence "concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013) (citation omitted), *cert. denied*, 134 S. Ct. 1792 (U.S. 2014).

Our Supreme Court, in *Commonwealth v. Clay*, 64 A.3d 1049 (Pa. 2013), explained the standard for this Court's review of a challenge to the weight of the evidence:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Id.*, 64 A.3d at 1054-55 (citations omitted). Moreover, in considering a weight of the evidence claim, we bear in mind that "[t]he jury [or trial court, sitting as fact-finder] is the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses." *Commonwealth v. Clemons*, ___ A.3d ___, ___ [2019 Pa. LEXIS 338 at *47] (Pa. January 23, 2019).

Here, in rejecting Braswell's weight claim, the trial court opined:

[Braswell's] first alleged error is that Mull's testimony was not credible. This Court properly allowed [Braswell's] counsel to cross-examine Mull regarding her *crimen falsi* convictions. This Court's credibility determination regarding Mull does not shock one's conscience. The fact that Mull had *crimen falsi* does not undermine the court's verdict. A fact-finder is not required to disbelieve a witness because she has *crimen falsi* convictions. In the case at bar, there is overwhelming evidence from the victim herself to sustain the verdict of guilty of Indecent Assault.

[Braswell] next contends, without citation to authority, that [Braswell's] recorded statement was given undue weight because it was not his full and complete statement. This contention is meritless. Officer Palmer testified that the recorded statement basically recapped what [Braswell] and officers discussed prior to the recording. At trial, [Braswell] was asked whether there was any information or details that he gave the officers that was not contained in the recorded statement. [Braswell] responded the only information that was not included in the recorded statement was that he told the officers he felt he was being set up for financial gain by Mull. As such, reliance upon [Braswell's] recorded statement was proper.

Finally, [Braswell] alleges the verdict was against the weight of the evidence because his testimony was credible. This allegation has no value. As cited earlier, it is for the court to determine the credibility of the witnesses. The fact that this Court implied that [Braswell] lacked credibility does not shock one's conscience. Additionally, a fact-finder may perceive that the inconsistencies between [Braswell's] trial testimony and his statement to the officers were material. [Braswell] informed Officer Palmer that he could have unintentionally touched Mull in an inappropriate way. Yet, at trial, he testified he did not touch Mull at all and further alleged that she was the one who engaged in sexual touching. This Court believes the variations in [Braswell's] story to be critical and undermines his credibility.

Trial Court Opinion at 9 - 11.

Braswell argues his recorded statement to police lacked completeness

and should not have been relied upon by the trial court, and that his testimony

- 7 -

was credible and any inconsistencies between his trial testimony and his recorded statement to police were not substantive. We find these arguments present no basis upon which to disturb the decision of the trial court.

In his recorded statement, Braswell stated, *inter alia*: "I moved, may have moved something and touched her [Mull], and she may have thought that I was doing something intentionally. Then she walked behind me and she brushed up against me and at that point it's like I'm just like basically saying I hope she don't take it like I'm sexually doing something to her." N.T., 2/10/2017, at 32. At trial, on direct examination, Braswell testified he had no physical contact with the complainant, and the complainant contacted him: "On her way back from the dish room she walked behind me. When she walked behind me she rubbed her breast and her vagina against my back and her hand touched the left side of my back as if she was rubbing it on her way past me and I just stood there in a frozen state like being surprised that she would do something like that." N.T., 2/10/2017, at 22. On cross examination, Braswell denied any unintentional touching. *Id.* at 31.

The trial court, hearing all the evidence, found the complainant was a credible witness and Braswell was not credible, and that the variations between the recorded statement and his testimony were material and undermined his credibility.

Braswell argues his recorded statement and his trial testimony "demonstrate a distinction without a difference." Braswell's Brief at 16. He

maintains a close reading of the recorded statement reflects he did attempt to tell the police inspector that Mull assaulted him, referring to his statement "she walked behind me [and] she brushed up against me," but that the inspector steered the questioning in a different direction. **See** Braswell's Brief at 17. Further, Braswell attacks the complainant's credibility because she has *crimen falsi* convictions, and elevates his own account over hers, relying on the testimony of his character witness, and arguing that although other individuals were present in the room, no independent witnesses were offered by the Commonwealth. He claims the trial court's credibility determinations are "tantamount to a 'denial of justice.'" Braswell's Brief at 19. He further contends "[t]he Commonwealth's evidence was so tenuous, vague and uncertain, and of such low quality, that the verdict of guilty shocks the conscience. Accordingly, when revisiting the testimony at this trial, no reasonable fact finder should have found Mr. Braswell guilty." Braswell's Brief at 19.

Braswell overlooks the fact that this Court may not reweigh the evidence or make credibility determinations. At trial, when asked whether there was any information he had given to the police inspector that was not included in the recorded statement, Braswell responded the only missing detail was that he believed the complainant set him up for financial gain. Therefore, Braswell had the opportunity to address any incompleteness in the recorded statement. Furthermore, the trial court, sitting as fact-finder, was free to find Mull

credible, and find Braswell not credible and resolve the inconsistencies between his recorded statement and his trial testimony against him. As discussed above, our Supreme Court has instructed that we must review the trial court's exercise of discretion in deciding the weight claim. Applying this deferential standard of review, we conclude Braswell has failed to show that the trial court, in denying the motion for a new trial, exceeded the limits of its discretion by "reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias or ill will." **Clay, supra**, 64 A.3d at 1056. Accordingly, Braswell is not entitled to relief on his weight of the evidence claim.

Judgment of sentence affirmed.

Judge Murray did not participate in the consideration or decision of this case.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/20/2019